[No. 48263-2. En Banc. November 10, 1982.]

THE STATE OF WASHINGTON, *Respondent*, v. LAWRENCE T. SHERMAN, *Appellant*.

*David L. Shorett* and *Anne Donnelly*, for appellant.

*Don Herron, Prosecuting Attorney, Joseph D. Mladinov, Senior Deputy*, and *Kathryn Brook Gerhardt, Deputy*, for respondent.

*Julie A. Kesler* and *Nancy L. Talner* on behalf of Washington Appellate Defender Association, amici curiae for appellant.

UTTER, J.—Lawrence Sherman was convicted by a jury of violating RCW 46.61.024, the felony flight statute. On direct appeal he raises numerous claims related to the constitutionality of the statute and the trial court's instructions concerning it. We hold RCW 46.61.024 constitutional and affirm Sherman's conviction under the statute.

At 1:30 a.m. on July 22, 1980, Sherman was driving his motorcycle eastbound on 112th Street in Pierce County. Uniformed officers in a patrol car traveling westbound on the same road observed him approaching and pulled to the side of the road to watch his approach. As he passed the patrol car, they estimated that his speed was 85 m.p.h. in a 45 m.p.h. zone. The officers reversed direction, turned on the patrol car's siren and warning lights, and pursued Sherman. Sherman stopped 1 mile from where he passed the patrol car, after turning onto a side road. At trial, Sherman testified he was unaware he was being pursued until he made a right turn and observed the patrol car, at which time he stopped. His motorcycle lacked a rearview mirror. The officers testified Sherman looked at the patrol car as he passed it and "did turn his head around and looked at our patrol car a couple of times" during the pursuit. Sherman was convicted under RCW 46.61.024, and his motion for a new trial was denied.

All of Sherman's claims ultimately relate to the language of RCW 46.61.024. The statute provides:

> Any driver of a motor vehicle who wilfully fails or refuses to immediately bring his vehicle to a stop and who drives his vehicle in a manner indicating a wanton and wilful disregard for the lives or property of others while attempting to elude a pursuing police vehicle, after being given a visual or audible signal to bring the vehicle to a stop, shall be guilty of a class C felony. The signal given by the police officer may be by hand, voice, emergency light, or siren. The officer giving such a signal shall be in uniform and his vehicle shall be appropriately marked showing it to be an official police vehicle.

Sherman argues the words "immediately" and "indicating" in the statute are unconstitutionally vague. The

Court of Appeals in *State v. Mather,* 28 Wn. App. 700, 626 P.2d 44 (1981) and *State v. Taylor,* 30 Wn. App. 844, 638 P.2d 630 (1982) held RCW 46.61.024 is not void for vagueness. The *Mather* court set out the test for determining if a statute is unconstitutionally vague.

> A statute is unconstitutionally vague if it does not provide fair notice, measured by common practice and understanding, of the conduct that is prohibited. Fair notice exists where persons of reasonable understanding are not required to guess at the meaning of the statute. *State v. Carter,* 89 Wn.2d 236, 570 P.2d 1218 (1977).

28 Wn. App. at 702.

■ As a threshold consideration, Sherman must establish standing to bring his void for vagueness claim. Generally speaking, one must claim the statute is vague as to one's conduct to have such standing. If one's conduct is within the hard–core arena (conduct the statute is clearly intended to proscribe), one may not bring a vagueness claim, unless the claim includes a claim of unconstitutional overbreadth.[1] *See* Note, *The Void–for–Vagueness Doctrine in the Supreme Court,* 109 U. Pa. L. Rev. 67, 101 (1960); *Void for Vagueness—Judicial Response to Allegedly Vague Statutes—State v. Zuanich, 92 Wn.2d 61, 593 P.2d 1314 (1979),* 56 Wash. L. Rev. 131 (1980); L. Tribe, *American Constitutional Law* 716–22 (1978) (and cases cited therein). *Cf. State v. Zuanich,* 92 Wn.2d 61, 593 P.2d 1314 (1979) (giving appellants standing but finding the statutes not vague because appellants' conduct was within the statute's hard core). Since Sherman claims the term "immediately" is vague as to his conduct, he has standing to raise this claim.

■ Sherman argues the term "immediately" does not

---

[1]Specifically, third party standing has been allowed in First Amendment overbreadth claims. *See* L. Tribe, *American Constitutional Law* 720–22 (1978). The rationale for such third party standing is that those whose conduct may be constitutionally proscribed may nevertheless bring an overbreadth claim because those to whom the statute is overbroad will refrain from conduct (be "chilled") and ⁚ e statute's overbreadth will not be litigated.

provide notice of whether "immediately" means "instantaneous" or "as soon as reasonably possible." In the context of the statute, the term "immediately" provides reasonable notice of what the statute requires. A suspect must (1) willfully fail (2) to immediately bring his vehicle to a stop, (3) and drive in a manner indicating a wanton and willful disregard for the lives or property of others (4) while attempting to elude police after being signaled to stop by a uniformed officer. A "person of reasonable understanding" would not have to guess that the term "immediately" means stopping as soon as reasonably possible once signaled by a police officer to halt. Sherman's vagueness argument is really an objection that the facts of his case demonstrate he stopped "as soon as reasonably possible." Sherman estimates it took him 40 seconds to stop. If, as the officers testified, he turned to look at the patrol car a "couple of times", the trier of fact could well have found he did not meet the requirements of "immediately."

Sherman next argues the word "indicating" is unconstitutionally vague. The vagueness Sherman ascribes to this word is that it leaves unclear whether a person must *actually* drive with a wanton and willful disregard or drive in a manner only *indicating* a wanton and willful disregard to satisfy an element of the crime.

Sherman does not have standing to bring this vagueness claim. He disputed some of the facts in the case. He denied that he crossed the center line on 112th Street, made a turn onto 85th Street at 45 m.p.h. and left a 40–foot skid mark. He acknowledged he had had four to five drinks, that his battery was failing and his lights were flicking on and off, and that he was speeding at least 25 m.p.h. over the speed limit. But he offered no evidence that he was subjectively unaware of and not responsible for the acts he was performing. Thus, even if the jury found his driving only "indicated" a wanton and willful disregard, Sherman presented no evidence to rebut the inference from the manner in which he drove that he *actually* drove with wanton and willful disregard. He argues only that his driving did not

even "indicate" wanton and willful disregard. The trier of fact rejected that argument, however. The statute is absolutely clear that at the very least the manner in which one drives must indicate wanton and willful disregard. While the statute is unclear as to whether it establishes an objective or subjective standard of wanton and willful disregard, Sherman does not have standing to bring this vagueness claim. He presented no evidence to prove that even though his conduct "indicated" wanton and willful disregard, he did not actually have that mental state.[2]

Notwithstanding the above discussion, Sherman raises other due process like claims which require us to examine the meaning of the term "indicating". Sherman argues the statute impermissibly imposes strict liability for an offense that requires proof of intent. Sherman's argument seems to be the language of the statute lacks a culpable mental element, and this type of crime requires such an element. Therefore, the court should require by implication such a mental element. *State v. Turner*, 78 Wn.2d 276, 474 P.2d 91, 41 A.L.R.3d 493 (1970). Obviously, the statute does contain culpable mental elements. One must "willfully fail to stop" and "attempt to elude."

The real question is whether driving "in a manner indicating a wanton and wilful disregard" also constitutes a mental element of the crime of felony flight. We conclude this aspect of the statute contains both an objective and subjective component.

█ The term "indicating" does initially establish an objective inquiry. Generally speaking, a wanton and willful disregard will only be established by circumstantial evidence of the way a defendant drives. In addition, the State is only interested in punishing such a mental state when it

---

[2]Sherman did present evidence that he did not willfully fail to stop and did not attempt to elude the police, but he does not challenge the clarity of the statute or the trial court's instructions in this regard. The trial court instructed unambiguously on this litigable mental element, and the jury simply did not believe Sherman's argument that he did not willfully fail to stop or attempt to elude the police.

is exhibited. A misanthrope may sit quietly in his room feeling wanton and willful disregard for the world, but unless he demonstrates his feelings through conduct—or in this statutory context drives "in a manner indicating" his feelings—the State is content to let him brood. The language "drives his vehicle in a manner indicating a wanton and wilful disregard" expresses the State's interest in proscribing conduct exhibiting a certain disposition.

This does not mean the above language establishes solely an objective element of the crime. It establishes only that the State is proscribing both the "conduct" and the "disposition", and that "disposition" invariably is proven by inference from circumstantial evidence. Circumstantial evidence may "indicate" a wanton and willful disregard, but the defendant may rebut that inference from circumstantial evidence. For instance, the defendant may have had a seizure while driving. While his manner of driving would indicate wanton and willful disregard, the defendant would not actually have wanton and willful disregard for others.[3] To the extent the language of the statute might lead a jury to believe the standard is solely objective, trial courts should instruct that circumstantial evidence of the manner one drives creates only a rebuttable inference that the defendant had "wanton and wilful disregard for the lives or property of others . . ."

■ To the extent it was error for the trial court not to instruct on the meaning of "indicating", that error was harmless beyond a reasonable doubt as to Sherman. *Harrington v. California,* 395 U.S. 250, 23 L. Ed. 2d 284, 89 S. Ct. 1726 (1969); *Chapman v. California,* 386 U.S. 18, 17 L.

---

[3]We do not doubt the Legislature was constitutionally capable of creating an objective standard of driving "in a manner indicating a wanton and wilful disregard for the lives or property of others", but the legislative history of the statute indicates the above language was treated the same as the standard for the misdemeanor offense of reckless driving. *See* recorded discussion before the Senate Judiciary Committee on SB 2468, 46th Legislature (1979), State Archives; Bill Report for the House of Representatives on SB 2468, April 5, 1979. Reckless driving requires actual "wilful and wanton disregard".

Ed. 2d 705, 87 S. Ct. 824, 24 A.L.R.3d 1065 (1967). As previously indicated in discussing Sherman's void for vagueness claim, he presented no evidence to rebut the inference from circumstantial evidence that he drove with wanton and willful disregard. If we were to remand, Mr. Sherman would simply be convicted on the same evidence that was presented at the first trial. *See State v. Shipp,* 93 Wn.2d 510, 610 P.2d 1322 (1980); *State v. Wheeler,* 95 Wn.2d 799, 808, 631 P.2d 376 (1981); *State v. Simmons,* 28 Wn. App. 243, 245–46, 622 P.2d 866 (1980); *State v. Russell,* 27 Wn. App. 309, 312–13, 617 P.2d 467 (1980); *State v. Ticeson,* 26 Wn. App. 876, 879, 614 P.2d 245 (1980).[4] Thus, the trial court's failure to give a qualifying instruction on the term "indicating" did not contribute to Sherman's conviction. *Chapman v. California, supra.*

Sherman finally claims RCW 46.61.024 violates constitutional provisions of equal protection. Sherman's claim is that the statute is comprised of precisely the same elements contained in two misdemeanor statutes (RCW 46.61.020— failure to stop; RCW 46.61.500—reckless driving).[5] As such,

---

[4]Sherman also claims that the trial court's jury instruction on wantonness was constitutional error in light of *State v. Shipp,* 93 Wn.2d 510, 610 P.2d 1322 (1980). That instruction provided:

Wanton means acting intentionally in heedless disregard of the consequences and under such surrounding circumstances and conditions that a reasonable person would know or have reason to know that such conduct would, in a high degree of probability, harm the person or property of another.

Instruction 6. He claims use of the "reasonable person" standard might have misled the jury into believing it did not need to find actual wantonness. As a threshold question, Sherman may not raise this claim since he requested it at trial. *State v. Boyer,* 91 Wn.2d 342, 588 P.2d 1151, *reconsideration denied,* 91 Wn.2d at 345 (1979). Even assuming the instruction was unconstitutional under *Shipp,* the above instruction was harmless since the jury was also instructed that the defendant must have acted "intentionally and purposely". Verbatim Report of Proceedings, at 117. *See State v. Wheeler,* 95 Wn.2d 799, 808, 631 P.2d 376 (1981); *State v. Shipp, supra.*

[5]The relevant provisions of the two misdemeanor statutes are as follows:

"It shall be unlawful for any person while operating or in charge of any vehicle . . . to refuse or neglect to stop when signaled to stop by any police . . . Any police officer shall on request produce evidence of his authorization as such." RCW 46.61.020.

the prosecutor has unconstitutional discretion to charge a defendant with a felony or a misdemeanor.

■ The existence of two statutes which declare the same acts to be crimes, but penalize more severely under one than under the other, constitutes a denial of equal protection. *State v. Martell*, 22 Wn. App. 415, 417, 591 P.2d 789 (1979). All that is required is that the elements of the statutes prohibiting the behavior be "the same or essentially the same." *State v. Rentfrow*, 15 Wn. App. 837, 840, 552 P.2d 202 (1976). *See also State v. Zornes*, 78 Wn.2d 9, 475 P.2d 109 (1970).[6]

All equal protection cases presented by Sherman compare the elements of one offense with those of another. *See, e.g., State v. Zornes, supra; Olsen v. Delmore*, 48 Wn.2d 545, 295 P.2d 324 (1956); *State v. Rentfrow, supra*. Sherman attempts to compare the felony flight offense with *two* separate misdemeanor offenses. While it is unreasonable and unconstitutional to provide different punishment for the same acts, it is reasonable and constitutional to provide greater punishment for two acts occurring in sequence than would be given if each act occurred in isolation. The Legislature might logically conclude greater punishment is deserved when a person willfully fails to stop upon police command and drives with willful and wanton disregard for others while eluding the police than when a person on separate occasions drives recklessly and fails to stop when signaled by police. Willful and wanton disregard while eluding the police has a cumulative effect, which heightens public interest and warrants more severe punishment.

---

"(1) Any person who drives any vehicle in wilful or wanton disregard for the safety of persons or property is guilty of reckless driving." RCW 46.61.500.

[6]We realize the United States Supreme Court has found no constitutional infirmities with two federal statutes that, while independent of each other and not coextensive, punish the same conduct differently. *United States v. Batchelder*, 442 U.S. 114, 60 L. Ed. 2d 755, 99 S. Ct. 2198 (1979). Since we find Sherman's equal protection claims unmeritorious, we need not decide whether equal protection analysis under our state constitution would render a different result than that in *Batchelder*.

The correct framework for equal protection analysis here should be separate comparisons of the felony flight statute with the reckless driving statute and with the failure to stop statute. When so viewed, an analysis of the elements leads to the conclusion the felony flight statute has more elements than each misdemeanor statute.

The prosecution may indeed charge one of the misdemeanors when the elements of the felony are made out, but this will be true in numerous statutory contexts. What is critical is that if the elements of only one of the misdemeanors are made out, the prosecutor may *not* charge the felony.

In conclusion, the felony flight statute, RCW 46.61.024, contains different elements than those for the misdemeanors of reckless driving or failure to stop. Furthermore, the more severe punishment meted out for felony flight is substantially and reasonably related to the character of the crime. *State v. Martinez,* 85 Wn.2d 671, 538 P.2d 521 (1975).

Appellant's conviction is affirmed.

BRACHTENBACH, C.J., and ROSELLINI, STAFFORD, DOLLIVER, WILLIAMS, DORE, DIMMICK, and PEARSON, JJ., concur.

Reconsideration denied February 9, 1983.