[No. 21544-2-I.  Division One.  January 16, 1990.]

THE STATE OF WASHINGTON, *Respondent,* v. HAROLD RAY MITCHELL, *Appellant.*

---

*Dawn Monroe,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Kelly Thomas, Peter Goldman,* and *Jeanette Dalton, Deputies,* for respondent.

WINSOR, J.—Harold Mitchell appeals from a judgment and sentence for attempting to elude a pursuing police

vehicle. Mitchell challenges two evidentiary rulings, and alleges instructional error. We affirm.

Harold Mitchell was tried before a jury on a charge of attempting to elude a pursuing police vehicle in violation of RCW 46.61.024. At trial, the arresting officers testified that they arrested Mitchell on the eluding charge after pursuing him for several blocks. During the chase, the police officers activated the overhead flashing lights, siren and headlights on their Seattle police patrol car. The officers tried to communicate with Mitchell by a public address system.

Mitchell testified in his own behalf. He claimed not to have seen or heard the police vehicle until just before being apprehended. Mitchell said that he had been listening to the car radio, which was playing at a very high volume, and that his car's engine noise was very loud as a result of a badly damaged exhaust system. His car windows were closed. Two other witnesses, including Steve Smotherton, the mechanic who later repaired Mitchell's exhaust system, testified that Mitchell's car was very loud.

Before trial, the State moved to have members of the jury sit four at a time in a patrol car, with the windows rolled up, while an officer activated the siren of another patrol car. Mitchell objected, in part because the proposed demonstration did not accurately simulate the incident as it occurred. The trial court allowed the State to activate a siren while the jurors stood outside the patrol car.[1] The court described this as a portrayal of the siren's sound level, and refused to allow any "contention or evidence that the conditions were similar, as far as interior noise of [Mitchell's] vehicle."

I

On appeal, Mitchell reasserts his argument that the court erred when it allowed jurors to hear a police siren. He argues that the "experiment" violated the rule requiring

---

[1]The court, in ruling the jurors should not be in the patrol car, expressly invited defendant to request they be in the car if the defendant so preferred. Defendant made no such request.

the conditions of an experiment used as evidence to be substantially similar to those of the event at issue. *Jenkins v. Snohomish Cy. PUD 1,* 105 Wn.2d 99, 107, 713 P.2d 79 (1986).

We agree with Mitchell that the siren portrayal bore little, if any, similarity to the conditions of the pursuit. The police siren heard by the jury was not muffled by traffic, engine noise, a loud radio, or closed windows. Accordingly, if we were to analyze the siren activation under the rules governing admission of experiments and demonstrations, we would find its admission to be error. We do not do so, however, because the sounding of the siren for the jury was not an experiment, reconstruction or demonstration.[2] Instead, it was real or illustrative evidence.

■■ Real evidence is evidence that allegedly played an actual part in the incident in question. Simply stated, illustrative evidence is evidence substantially like real evidence. 5 K. Tegland, Wash. Prac., *Evidence* §§ 89(1), 90(1)–(2) (3d ed. 1989); *see generally State v. Gray,* 64 Wn.2d 979, 395 P.2d 490 (1964). Real evidence is admissible upon a showing that it is genuinely what it purports to be, and that its condition is unchanged. Illustrative evidence is admissible upon a showing that it is relevant and material to the ultimate fact to be demonstrated, and that it is substantially like, and similar in function and operation to, the thing in issue. 5 Wash. Prac., *supra* § 90, at 276–90.

■ Here, the sound of the police siren was real or illustrative evidence. A proper foundation was made for its admission.[3] Its admission was therefore not error.

---

[2]Because of our holding that the siren was not a demonstration, we do not reach Mitchell's contention that the trial court erred in not more carefully explaining the differences in conditions between the posed evidence and the situation sought to be reconstructed. We also note that Mitchell failed to object at trial to the instruction given, or assign error to it on appeal. The sufficiency of the court's instruction is therefore not properly before us. RAP 2.5(a), 10.3(a)(3).

[3]Officer Henry, one of the arresting officers, testified that the siren on the patrol car used was "virtually identical" to that used while pursuing Mitchell. He

The limited case law on this issue supports our conclusion. In *Williams v. Bethany Volunteer Fire Dep't*, 307 N.C. 430, 298 S.E.2d 352 (1983), a case involving a collision between an automobile and a fire truck, the court upheld a ruling that allowed the jury to observe the fire truck approach with its lights flashing and siren sounding. The *Williams* court held that the demonstration was not an experiment, and thus rules governing admissibility of experiments were inapplicable. Instead, the court found the evidence properly admitted, both as illustrative evidence, *i.e.*, evidence illustrating oral testimony describing the fire truck; and as real evidence, *i.e.*, evidence furnished by producing the thing itself for inspection, rather than having witnesses describe it. *Williams*, 298 S.E.2d at 354-55. As such, the only prerequisite for its admissibility was that a proper foundation be laid. *Williams*, 298 S.E.2d at 355.

*Grand Trunk W.R.R. v. Pursley*, 530 N.E.2d 139 (Ind. Ct. App. 1988) is also supportive. The *Pursley* court held that the trial court committed reversible error when it allowed the jury to view an inaccurate reenactment of the accident at issue. It then distinguished *Williams*, commenting:

> In *Williams*, the jurors merely viewed a fire truck—the fire truck approached them with lights on and siren sounding. A proper foundation was laid for the view because all the evidence indicated that the identical fire truck was used and that the flashing lights and siren were in the same condition as at the time of the occurrence in question (fire truck—car wreck). There was no attempt, as here, to re-create the accident or to introduce new evidence.

*Pursley*, 530 N.E.2d at 141 n.2. *See also Cole v. McGhie*, 59 Wn.2d 436, 443-48, 367 P.2d 844 (1962) (discussing whether a reenactment of the events leading to plaintiff's injury was an improperly allowed experiment, or a properly admitted jury view).

---

explained that: "All sirens are the same. . . . There is no way to control the volume." He also testified that he had checked the siren to be sounded for the jury, and that he could note no difference between it and the one used when he pursued Mitchell.

## II

Mitchell next assigns error to the trial court's ruling prohibiting his mechanic, Smotherton, from describing what the noise level inside Mitchell's car would have been before its exhaust system was replaced. On cross examination, Smotherton admitted that he had not been inside the vehicle before he repaired it. On redirect, Mitchell asked Smotherton how loud Mitchell's muffler would have been "if you were sitting in Mr. Mitchell's car." The State objected on the ground that there was "[n]o foundation with this vehicle. . . . He already said he didn't ride inside it." The court sustained this objection. Mitchell then sought to lay a foundation by asking Smotherton whether he could give an accurate hypothetical description of what it would have been like inside Mitchell's car. The State objected on the ground that Mitchell's inquiry was beyond the scope of cross examination. Its objection was sustained. Mitchell made no argument against the ruling, and made no offer of proof.

■ On appeal, Mitchell contends that the trial court's ruling excluding Smotherton's testimony was error because the State opened the door to this line of inquiry. Assuming arguendo that this issue has been preserved for appeal,[4] we find no error. Whether Smotherton's testimony about noise levels within Mitchell's car was within the scope of redirect was a close question. We cannot say that the trial court abused its discretion in ruling that it was not. *See State v. Young,* 89 Wn.2d 613, 628, 574 P.2d 1171 (scope of cross examination is within trial court's discretion), *cert. denied,* 439 U.S. 870, 58 L. Ed. 2d 182, 99 S. Ct. 200 (1978).

---

[4]Alleged error in excluding evidence will not ordinarily be reviewed unless a timely and specific argument was made, on the record, that the evidence ought to be admitted, and an offer of proof was made. ER 103(a)(2); *see also State v. Tuffree,* 35 Wn. App. 243, 249, 666 P.2d 912, *review denied,* 100 Wn.2d 1015 (1983); 5 Wash. Prac., *supra* § 12. Moreover, we note that Mitchell did not follow the common practice of requesting permission to reopen direct examination after a ruling that the proffered testimony is beyond the scope of cross examination, a request that is usually granted.

## III

■ Mitchell last contends that the trial court erred when it refused to give his proposed instruction as to what rebuttal evidence can be considered on the wanton and willful disregard element of an RCW 46.61.024 violation.[5] This element contains both subjective and objective components. *State v. Sherman*, 98 Wn.2d 53, 58–59, 653 P.2d 612 (1982). Therefore, the jury must be instructed "that circumstantial evidence of the manner one drives creates only a rebuttable inference that the defendant had 'wanton and wilful disregard for the lives or property of others . . .'". *Sherman*, 98 Wn.2d at 59.

Here, the trial court gave a *Sherman* instruction which stated that the defendant's objective conduct could be "rebutted by other evidence in the case whether objective or subjective." Mitchell contends that this instruction was too broad, and that the trial court should have instructed the jury that the defendant's objective conduct could be rebutted only by "subjective evidence pertaining to defendant's mental state."

Mitchell argues that his narrower proposed instruction is required by *State v. Thomas*, 109 Wn.2d 222, 743 P.2d 816 (1987). He argues that under *Thomas*, the jury must consider only rebuttal evidence pertaining to the defendant's subjective mental state, and that the instruction given here confused the jury as to its duty.

Mitchell misapprehends *Thomas*. The *Thomas* court held that intoxication can rebut the inference of wanton and willful disregard created by a defendant's driving, and that in such a case, a *Sherman* instruction is necessary. 109 Wn.2d at 227–28. In so holding, the *Thomas* court did say that defendant's objective conduct "may be rebutted by subjective evidence pertaining to defendant's mental state."

---

[5]RCW 46.61.024 provides in pertinent part:

"Any driver of a motor vehicle who wilfully fails or refuses to immediately bring his vehicle to a stop and who drives his vehicle in a manner indicating a wanton or wilful disregard for the lives or property of others while attempting to elude a pursuing police vehicle . . . shall be guilty of a class C felony."

109 Wn.2d at 227. This is precisely the language contained in Mitchell's proposed instruction. However, it is apparent from the context of the statement that the *Thomas* court did not intend to suggest the wording of a jury instruction. *Thomas*, therefore, does not alter the *Sherman* court's holding as to the content of a *Sherman* instruction, *i.e.*, that circumstantial evidence can rebut the inference of wanton and willful disregard created by the defendant's driving. The instruction given here satisfies this requirement.

■ Even if the instruction at issue did not satisfy *Sherman* and *Thomas*, it is difficult to perceive how the alleged instructional error could have prejudiced Mitchell. Mitchell's subjective mental state as to his manner of driving was not at issue at trial. Accordingly, any error in the text of the *Sherman* instruction given would be harmless beyond a reasonable doubt because it could not have contributed to Mitchell's conviction. *See Sherman*, 98 Wn.2d at 59–60 (failure to give rebuttable inference instruction harmless beyond a reasonable doubt where no evidence was offered to rebut the inference of wanton and willful disregard).

The judgment and sentence are affirmed.

SWANSON and PEKELIS, JJ., concur.