[No. 10651-1-I.   Division One.   September 6, 1983.]

THE STATE OF WASHINGTON, *Respondent,* v. PATRICK
OLIN PARKER, *Appellant.*

*Nancy Talner* of *Washington Appellate Defender Association,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Robert Weppner, Deputy,* for respondent.

SCHOLFIELD, J.—Patrick Olin Parker appeals his jury conviction for attempting to elude a pursuing police vehicle pursuant to RCW 46.61.024[1] (the "felony flight" statute). Ten assignments of error present four issues for decision. We affirm the trial court.

The State presented evidence from which the jury could find that on May 28, 1980, at approximately 11:30 p.m., a uniformed Seattle police officer driving a marked police car attempted to stop Parker for a traffic violation by pursuing him northbound on Aurora Avenue with emergency lights and siren in operation. Another uniformed police officer, driving a similarly marked police car and proceeding southbound on Aurora Avenue, also attempted to stop Parker by pulling his police vehicle partially into the northbound traffic lanes. Parker evaded the blocking car by driving around it and continued north on Aurora Avenue with the two police vehicles in pursuit.

Over the next approximately 4½ miles, Parker drove his automobile in a manner strongly indicating he was attempting to elude the police vehicles. Two police officers and one civilian witness provided substantial evidence Parker drove through several red lights without stopping, narrowly avoided head–on collisions with other vehicles, drove dangerously close to pedestrians, and was weaving in and out of traffic at speeds as high as 80 m.p.h.

Parker was finally stopped when his car struck an embankment and stalled. He exited his vehicle, but had to be forced down off the embankment by a police officer. Parker had an odor of alcohol on his breath and exhibited signs of being under the influence. He struggled with police

---

[1]Former RCW 46.61.024 provides:

"Any driver of a motor vehicle who wilfully fails or refuses to immediately bring his vehicle to a stop and who drives his vehicle in a manner indicating a wanton and wilful disregard for the lives or property of others while attempting to elude a pursuing police vehicle, after being given a visual or audible signal to bring the vehicle to a stop, shall be guilty of a class C felony. The signal given by the police officer may be by hand, voice, emergency light, or siren. The officer giving such a signal shall be in uniform and his vehicle shall be appropriately marked showing it to be an official police vehicle."

officers at the time of his arrest. Parker was taken to the Wallingford police station, informed of his *Miranda* rights and asked to submit to a Breathalyzer examination. He asked to make a telephone call to his attorney but was told the paper work should be completed first. He refused to sign the form agreeing to the Breathalyzer, and was then allowed to place two telephone calls in an attempt to reach an attorney.

In his testimony, Parker did not deny the State's evidence, but testified that he had no memory of the erratic and dangerous driving described by the witnesses. He testified that he drank two drinks of Scotch whiskey with business acquaintances early in the evening and then drove to the home of a friend where he consumed one bourbon and Coke. He described his reaction to the bourbon and Coke as being like a reaction to a drug, and that when he felt the effects of this third drink, his only thought was to get to his home. His next recollection was rolling down the embankment with a police officer. He also testified the defroster on his car was not functioning and he had difficulty seeing out the windows.

■ Parker first contends he was denied equal protection of the law as guaranteed by U.S. Const. amend. 14, § 1 and Const. art. 1, § 12 because he was punished for a felony when the State could have charged him with several misdemeanor offenses. Parker argues that RCW 46.61.020, which proscribes a motorist's failure to stop his vehicle when signaled by a police officer to do so, and RCW 46.61.500, which proscribes driving a car with "wilful or wanton disregard for the safety of persons or property", contain the same elements that make up the "felony flight" statute, and that equal protection is denied when the prosecutor has discretion to charge the same conduct as either a misdemeanor or a felony.

*State v. Sherman*, 98 Wn.2d 53, 61–62, 653 P.2d 612 (1982) rejected the same contention, involving the same three statutes:

Sherman attempts to compare the felony flight offense with *two* separate misdemeanor offenses. While it is unreasonable and unconstitutional to provide different punishment for the same acts, it is reasonable and constitutional to provide greater punishment for two acts occurring in sequence than would be given if each act occurred in isolation. The Legislature might logically conclude greater punishment is deserved when a person willfully fails to stop upon police command and drives with willful and wanton disregard for others while eluding the police than when a person on separate occasions drives recklessly and fails to stop when signaled by police. Willful and wanton disregard while eluding the police has a cumulative effect, which heightens public interest and warrants more severe punishment.

. . . [A]n analysis of the elements leads to the conclusion the felony flight statute has more elements than each misdemeanor statute.

We reach the same conclusion here. Charging Parker under the felony flight statute did not deny him equal protection of the law.

■ Parker next contends the trial judge erred in refusing to instruct the jury on reckless driving as a lesser included offense. Two conditions must be satisfied for a defendant to obtain a lesser included offense instruction. As stated in *State v. Bower,* 28 Wn. App. 704, 709, 626 P.2d 39 (1981):

First, each element of the lesser offense must be a necessary element of the greater offense so that it is impossible to commit the greater offense without also committing the lesser offense. Second, the evidence in the case must support an inference that only the lesser offense was committed.

It is impossible to drive with the "wanton and wilful disregard" prohibited by the felony flight statute without driving with the "wilful or wanton disregard" which is the gravamen of reckless driving. Reckless driving is, therefore, an element in felony flight and is a lesser included offense in a prosecution for felony flight.

■ While it would have been proper for the trial judge to instruct on reckless driving as a lesser included offense,

it does not necessarily follow that failure to so instruct constitutes reversible error. In this case, the trial judge correctly instructed the jury on the elements of felony flight, and Parker does not claim that the evidence was insufficient to support a conviction on that charge.

Where the issues on the greater offense are fairly tried and the jury finds the defendant guilty of the greater offense, the failure to instruct on a lesser included offense can be harmless error. This is particularly true where it is clear that the defendant's theory of defense had to be considered and rejected by the jury in order to reach its verdict of guilty on the greater offense. *State v. Calhoun,* 60 Wn.2d 488, 374 P.2d 555 (1962); *State v. Baker,* 69 Wash. 589, 125 P. 1016 (1912).

In *State v. Kroll,* 87 Wn.2d 829, 558 P.2d 173 (1976), the defendant was convicted of first degree murder. The court's instructions on second degree murder as a lesser included offense were erroneous. In finding the error harmless, the court said:

> Although we find the instruction unconstitutional, we do not find the error to warrant reversing the conviction. A constitutional error can be harmless where the court is able to declare it to be harmless beyond a reasonable doubt. *Chapman v. California,* 386 U.S. 18, 17 L. Ed. 2d 705, 87 S. Ct. 824, 24 A.L.R.3d 1065 (1966). In the present case there can be no question but that the error was harmless as the defendant was convicted of first–degree murder. Were he convicted of second–degree murder a different question would be before us. The instruction clearly placed upon the State the burden of proving beyond a reasonable doubt the elements of first–degree murder. The jury's verdict shows that the State sustained that burden. It necessarily follows, therefore, that the presumption of second–degree murder and the potential shifting of the burden to the defendant for a manslaughter verdict were never elements for jury consideration. The error was harmless.

*State v. Kroll, supra* at 840–41. *Accord, State v. Johnson,* 29 Wn. App. 807, 811 n.1, 631 P.2d 413, *review denied,* 96 Wn.2d 1009 (1981); *State v. Kinsey,* 20 Wn. App. 299, 303,

579 P.2d 1347 (1978).

The only basis on which the jury could have found Parker guilty of only reckless driving would have been to accept his defense of intoxication. Parker requested and the court gave an instruction on voluntary intoxication.[2] The jury was also correctly instructed on the meaning of "intoxicated" and the words "wilful" and "wanton". Included as an element of the charge of felony flight was

> That the defendant wilfully failed or refused to immediately bring his or her vehicle to a stop after being so ordered;

Instruction 5.

It is obvious that the jury rejected Parker's defense of intoxication in reaching its unanimous verdict that he was guilty of the willful conduct which constitutes felony flight. There is no reason to conclude that a retrial where the jury was instructed on reckless driving as a lesser included offense would produce a different result. *State v. Rogers,* 83 Wn.2d 553, 520 P.2d 159, *cert. denied,* 419 U.S. 1053 (1974).

This conclusion is consistent with the deliberation sequence set forth in WPIC 155, which instructs the jury to complete their deliberation on the greater offense first and tells the jury that if they find the defendant guilty on the greater offense, they do not use the verdict forms provided for lesser included offenses.

The presumption that jurors follow the court's instructions is fundamental to effective judicial process. *State v. Gay,* 82 Wash. 423, 428, 144 P. 711 (1914); *Bordynoski v. Bergner,* 97 Wn.2d 335, 342, 644 P.2d 1173 (1982).

---

[2]Instruction 9 provides as follows:

"In any prosecution for a crime, it is a defense that the defendant did not possess the particular mental state necessary to constitute the crime.

"No act committed by a person while in a state of voluntary intoxication is less criminal by reason of that condition, but whenever the actual existence of any particular mental state is a necessary element to constitute a particular kind or degree of crime, the fact of intoxication may be taken into consideration in determining such mental state."

Until a showing is made that the jury did not follow the court's instructions, there is no basis for impeaching this jury verdict, proper in form, finding the defendant guilty of felony flight beyond a reasonable doubt. We conclude the failure to instruct on reckless driving was harmless error beyond a reasonable doubt.

Parker next contends that the trial judge erred when he referred to the offense charged in this case in two places within the instructions and in the verdict form as the crime of "failure to comply with police orders to stop". Parker contends that being charged with "felony flight" but being found guilty of "failure to comply with police orders to stop" amounts to conviction of an offense with which he was not charged.

An accused must be informed of the charge he is to meet at trial and cannot be tried for an offense not charged. *State v. Carr*, 97 Wn.2d 436, 645 P.2d 1098 (1982). The record establishes that Parker was fully informed he was charged with felony flight, and the instructions to the jury accurately listed the elements of that crime. The record reflects no objection to the judge's use of the description in the instructions or the verdict form on this ground. Parker has not demonstrated prejudicial error.

Finally, Parker alleges he was denied his constitutional right to counsel when he was required to decide whether to submit to a Breathalyzer test before consulting an attorney. We do not agree.

At a pretrial hearing held October 6, 1980, the testimony permitted findings that Parker was somewhat violent and combative until after he was taken to the Wallingford precinct police station. He was taken to the Breathalyzer room, where he was advised of his *Miranda*[3] rights. This included advice of his right to an attorney, of his right to refuse the

---

[3]*Miranda v. Arizona*, 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602, 10 A.L.R.3d 974 (1966).

test and, if he did refuse, his driving privileges would be suspended for 6 months. He was also advised of his right to have an independent test done. Parker responded he would not take the test until he had an attorney there to "supervise" it.

The officer testified he told Parker it was not necessary to have an attorney present for the test. The officer gave Parker the telephone number of the public defender, took him to a telephone, and gave him an opportunity to use it. Parker testified that he signed a paper refusing the Breathalyzer test before he was allowed to use a telephone.

A defendant charged with driving while intoxicated has the right to consult with an attorney promptly following his arrest. *State v. Fitzsimmons,* 93 Wn.2d 436, 610 P.2d 893, *vacated,* 449 U.S. 977 (1980); *Tacoma v. Heater,* 67 Wn.2d 733, 409 P.2d 867 (1966). The judge hearing the pretrial motion found Parker was advised of his rights under *Miranda* and his rights relative to taking or refusing a Breathalyzer test, including his right to consult with an attorney at the earliest practical opportunity, and that this advice was given prior to Parker's signing the paper refusing to take a Breathalyzer. The judge also found that Parker was provided prompt access to a telephone, was provided the number of the public defender, and, in fact, placed telephone calls at that time.

The record supports the judge's findings and fairly reflects that Parker refused to take a Breathalyzer test after being fully advised of his rights and given the opportunity to exercise his right to consult with an attorney. Parker was not denied meaningful exercise of his right to access to counsel at a critical stage in these proceedings. *Seattle v. Box,* 29 Wn. App. 109, 627 P.2d 584 (1981); *State ex rel. Juckett v. Evergreen Dist. Court,* 32 Wn. App. 49, 645 P.2d 734 (1982); *Seattle v. Carpenito,* 32 Wn. App. 809, 649 P.2d 861 (1982).

658

Judgment affirmed.

DURHAM, A.C.J., and WILLIAMS, J., concur.

Review granted by Supreme Court December 2, 1983.