IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 69036-1-I |
| | ) | |
| Respondent, | ) | DIVISION ONE |
| | ) | |
| v. | ) | |
| | ) | UNPUBLISHED OPINION |
| WAYNE RICHARD DUBOIS, | ) | |
| | ) | |
| Appellant. | ) | FILED: January 13, 2014 |

SCHINDLER, J. — Wayne Richard Dubois seeks reversal of his jury conviction of first degree assault, second degree unlawful possession of a firearm, and possession of cocaine. Dubois asserts his attorney provided ineffective assistance of counsel by not renewing a motion to sever at trial. We affirm.

## FACTS

Shortly after 10:00 p.m. on June 25, 2011, three police officers observed a young man who appeared to be underage standing outside the open back door of a bar in White Center. When the man saw the officers, he ran into the bar. The officers reached the sidewalk in time to see the young man get into a dark green Ford Crown Victoria that quickly pulled away.

A few hours later, the officers watched as the same dark green Crown Victoria parked near a Walgreens store in the same neighborhood. After parking the car, the

same young man got out of the driver's door. Three passengers got out of the car and joined the man on the sidewalk. When the officers approached the group, the driver, later identified as Wayne Richard Dubois, was belligerent. The other men were quiet and cooperative. While one officer spoke with Dubois, the other officers used flashlights to look through the window of the car and saw what they believed to be a "substantial amount of crack cocaine." When Dubois saw the officers looking into the car, he yelled, "[H]ey, stay away from my fucking car."

The officers obtained the car keys from Dubois, impounded the car, and then released Dubois. In a later search of the car, officers found two bags of cocaine in the compartment next to the driver's door. In the glove box, the police found checks signed by Wayne Dubois, mail addressed to Wayne Dubois, and a direct deposit form listing a Chase Bank account and the name of Wayne Dubois.

On November 6, 2011, Dubois shot Alvin Hillis. About a week before the shooting, Hillis found a rock of cocaine on the floor of his former girlfriend's house. Over the next few days, Dubois asked other people to find out if Hillis took the cocaine. Hillis denied taking the cocaine.

On November 6, Hillis was standing near Parnell's Mini Mart at the corner of 23rd Avenue South and South Dearborn Street when he saw a dark green Crown Victoria driving toward him. The car stopped and Dubois got out of the driver's seat and approached Hillis. Dubois accused Hillis of stealing from him and said, "[Y]ou took something from me, I need it back." Dubois then got into the passenger side of the car and left. Hillis walked toward Martin Luther King Jr. Way South. When Hillis reached the corner, the dark green Crown Victoria pulled into the intersection. Dubois got out of

the passenger seat, approached Hillis, pulled out a gun and shot at him repeatedly. One bullet hit Hillis in the abdomen, causing serious injury. Hillis told the police Dubois shot him.

When the police arrested Dubois several days later, he agreed to a recorded interview. Dubois admitted driving the Crown Victoria to Parnell's on 23rd Avenue and Dearborn Street and confronting Hillis about taking "money" from him. But Dubois denied owning the Crown Victoria and shooting Hillis, or being in the car at the time of the shooting.

The State charged Dubois with first degree assault and second degree unlawful possession of a firearm on November 6, 2011, and one count of possession of cocaine on or about June 25 or 26. Dubois filed a motion to sever the possession of cocaine count from the two other counts for first degree assault and second degree unlawful possession of a firearm. Dubois argued that evidence connecting him to the Crown Victoria in June had little probative value because he admitted driving the Crown Victoria on the day of the shooting in November. Dubois also argued that he would be prejudiced by the joinder because the jury would improperly consider the evidence of the two separate crimes. The State argued that evidence collected during the investigation of the possession of cocaine in June was highly probative of whether Dubois owned the Crown Victoria. The State argued that this evidence was relevant to rebut Dubois' claim that he did not own the car and did not know who was driving the Crown Victoria at the time of the shooting.

The court denied the motion to sever. The court ruled, "The facts supporting the [cocaine possession] charge tie the defendant to the vehicle which makes it more likely

3

the defendant was in the vehicle at the time of the shooting." Citing State v. Bythrow, 114 Wn.2d 713, 718, 790 P.2d 154 (1990), the court also ruled the evidence was cross admissible and "[a]ny prejudice does not outweigh the concern for judicial economy."

Dubois did not renew the motion to sever at trial. The jury found Dubois guilty as charged. The trial court imposed a standard-range sentence.

## ANALYSIS

Dubois claims he received ineffective assistance of counsel because his attorney did not renew the motion to sever the charge of possession of cocaine from the charges of first degree assault and second degree unlawful possession of a firearm. CrR 4.4(a) requires a defendant to make a pretrial motion to sever and if overruled, to renew the motion before the close of the evidence. State v. Henderson, 48 Wn. App. 543, 551, 740 P.2d 329 (1987).

To establish a claim of ineffective assistance of counsel, Dubois has the burden to show that (1) counsel's performance fell below a minimum objective standard of reasonableness and (2) but for counsel's errors, there is a reasonable probability that the result of the trial would have been different. State v. West, 139 Wn.2d 37, 41-42, 983 P.2d 617 (1999) (citing Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)). Dubois must establish both prongs to prevail on an ineffective assistance of counsel claim. State v. McFarland, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995).

To prevail on an ineffective assistance of counsel claim based on counsel's failure to renew a motion to sever, Dubois must show both that the motion would have been granted and that, but for the deficient performance, there is a reasonable

4

probability that the outcome of the trial would have been different. State v. Standifer, 48 Wn. App. 121, 125-26, 737 P.2d 1308 (1987). Dubois cannot demonstrate that a motion to sever at trial would have been granted.

Offenses properly joined under CrR 4.3(a) may be severed if "the court determines that severance will promote a fair determination of the defendant's guilt or innocence of each offense." CrR 4.4(b); State v. Bythrow, 114 Wn.2d 713, 717, 790 P.2d 154 (1990). The defendant has the "burden of demonstrating that a trial involving both counts would be so manifestly prejudicial as to outweigh the concern for judicial economy." Bythrow, 114 Wn.2d at 718. When weighing potential prejudice from joinder, the court must consider whether (1) the State's evidence is strong on each count, (2) the defenses are clear on each count, (3) the trial court instructs the jury to consider each count separately, and (4) the evidence of each count is admissible on the other count even if not joined for trial. State v. Russell, 125 Wn.2d 24, 63, 882 P.2d 747 (1994).

Here, the State's evidence was strong on the charges of first degree assault of Hillis and possession of a firearm in November 2011, and the charge of possession of cocaine in June 2011. Dubois concedes that the State presented evidence supporting the assault and firearm charges. Hillis identified Dubois to police and testified at trial that Dubois shot him. Two witnesses to the shooting testified at trial to descriptions of the shooter and the car matching Dubois and the Crown Victoria.

But Dubois asserts that the State's evidence on possession of cocaine was less strong because no witness testified to seeing him "in actual possession of the cocaine" or driving the Crown Victoria. We disagree. The cocaine charge was based on strong

5

evidence of constructive possession. Police testified that Dubois got out of the driver's seat of the car and told officers to stay away from "my" car. Fingerprint and documentary evidence established Dubois had dominion and control over the Crown Victoria and its contents.

The defense on the cocaine possession charge and the assault and firearm charges were clear rather than inherently inconsistent or antagonistic. As to the assault and possession of a firearm, Dubois argued the State did not prove that he shot Hillis or that he intended to inflict great bodily harm. As to the possession of cocaine, Dubois argued the State did not prove the cocaine was his. Further, the trial court properly instructed the jury to consider each count separately.[1] We presume the jury followed the court's proper instruction. State v. Southerland, 109 Wn.2d 389, 391, 745 P.2d 33 (1987).

Nonetheless, Dubois claims the jury could improperly infer guilt as to the unrelated cocaine charge because the assault allegedly stemmed from a dispute over drugs. Dubois relies on State v. Sutherby, 165 Wn.2d 870, 885-86, 204 P.3d 916 (2009), to argue the jury could have improperly considered evidence of the cocaine possession to determine guilt in the shooting because the trial court did not provide a limiting instruction telling the jury that evidence of one crime could not be used to decide guilt for a separate crime. Sutherby is distinguishable. In Sutherby, unlike here, the prosecutor repeatedly argued the jury should consider evidence supporting one charge

---

[1] The court instructed the jury: "A separate crime is charged in each count. You must decide each count separately. Your verdict on one count should not control your verdict on any other count." See 11 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 3.01, at 80 (3d ed. 2008).

to determine the defendant's guilt on a separate charge of an unrelated crime. Sutherby, 165 Wn.2d at 885-86.

Finally, as the court ruled pretrial, even if not joined for trial, the evidence was cross admissible. The evidence connecting Dubois to the car for the cocaine charge would be admissible to show his connection to the car involved in the shooting. Evidence of Dubois's dominion and control over the Crown Victoria in June was relevant to rebut his claim to police in November that he did not own the car and did not know who was driving the car at the time of the shooting.

Because Dubois cannot show the trial court would have granted the motion to sever if counsel renewed the motion at trial, his claim of ineffective assistance of counsel fails.

In a statement of additional grounds for review, Dubois contends that the trial court improperly admitted evidence of his prior felony juvenile adjudication of unlawful possession of a firearm without engaging in a proper analysis under ER 404(b). Dubois also claims that his attorney provided ineffective assistance by failing to object to the admission of his prior juvenile adjudication. But the State was entitled to introduce the prior juvenile adjudication for unlawful possession of a firearm in order to prove an element of the charged crime of second degree unlawful possession of a firearm. RCW 9.41.040(2)(a)(i).

Dubois also challenges the trial court's denial of his CrR 3.6 motion to suppress the cocaine found in the Crown Victoria. He claims the "unreasonable intentional intrusive look into the car" violated his right to privacy. In its oral ruling on the CrR 3.6 motion, the trial court found that the officers were standing outside the car and looking

through the windshield when they observed the suspected crack cocaine in the driver's door compartment. Under the well established open view doctrine, an officer looking into a car from the outside and seeing contraband has not searched the car. See State v. Kennedy, 107 Wn.2d 1, 10, 726 P.2d 445 (1986) ("open view" involves an observation from a nonconstitutionally protected area).

We affirm.

WE CONCUR: